IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGELA M. TABB,                    :
                                   :
      Plaintiff,                   :
                                   :
vs.                                :        CIVIL ACTION 11-0287-M
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner of Social Security,   :
                                   :
      Defendant.                   :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 18). Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

1

(11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).

At the time of the administrative hearing, Plaintiff was forty-one years old, had completed a high school education and was certified as a nurse's aide (Tr. 59), and had previous work experience as a nurse's aide (Tr. 70). In claiming benefits, Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, sarcoidosis, hypertension, obesity, and osteoarthritis (Doc. 13 Fact Sheet).

The Plaintiff filed a protective application for disability benefits on October 12, 2007 (*see* Tr. 18; Tr. 101-08). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she could not perform her past relevant work, Tabb was able to perform specified sedentary jobs (Tr. 18-29). Plaintiff requested review of the hearing decision (Tr. 11-13) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Tabb alleges that:  (1) The ALJ did not properly consider the opinions of her treating physicians while giving greater weight to a non-medical source; and (2) the ALJ did not properly evaluate her obesity (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The relevant medical evidence of record follows.

Treatment notes from Tabb's treating physician, Dr. Jonathon E. Yoder, include an electrocardiogram from November 15, 2006 which revealed the following:

> 1. Normal left ventricular size and function with a LVEF of 65% with preserved wall motion.
> 2. Mild concentric left ventricular hypertrophy.
> 3. Evidence for diastolic dysfunction and left ventricular relaxation abnormality with E/A ratio of 0.72 on mitral inflow profile.
> 4. Trivial mitral regurgitation.
> 5. Trace mild tricuspid regurgitation with an estimated RV systolic pressure of 30 to 35 mm of mercury suggesting very mild hypertension.

(Tr. 206; *see generally* Tr. 200-21).  A chest x-ray on December 11, 2006 demonstrated persistent nodular interstitial lung disease consistent with sarcoidosis[1] (Tr. 205).

---

[1]"Sarcoidosis is a disorder resulting in noncaseating granulomas

A Dexa scan on June 19, 2007 demonstrated that, for her age and sex, Tabb's lumbar spine and hip showed significantly decreased bone mineral density (Tr. 236).  An MRI from September 11, 2007 revealed degenerative disc disease with a small extruded disc fragment at L5-S1 abutting and displacing the S1 nerve root as well as mild early changes of degenerative disc disease at L4-5 (Tr. 235).  On October 2, Plaintiff underwent an epidural steroid injection for low back pain with radicular pain to the left foot (Tr. 251).

Records from Dr. James E. Fay, a Pulmonologist, show that he treated her beginning in October 2001 (Tr. 252-310).  An examination on December 11, 2006 reveals that Tabb's sarcoidosis is at Stage II (Tr. 257).  The doctor noted that "she continues to have a chronic, bronchitic cough associated with a pack a day smoking habit;" it was his opinion that "most of her respiratory symptoms are due to her smoking and not her sarcoid" (Tr. 257).  Following a pulmonary function study, Fay noted that Plaintiff had only 59 percent of total lung capacity, down from 63% a year earlier.  He noted no obstructive impairments though there were some minor interstitial markings in the bases and somewhat

in one or more organs and tissues; etiology is unknown. The lungs and lymphatic system are most often affected, but sarcoidosis may affect any organ."  *See* http://www.merckmanuals.com/professional/pulmonary_

prominent hilar area.  Her oxygen rate was 98 percent.  In Dr.
Fay's examination of June 18, 2007, he stated that Tabb was
about one hundred pounds overweight, and although she had had a
recent bout of coughing and hoarseness because of her COPD, she
was in no acute distress; her chest was clear, with normal
breath sounds, and without rales or rhonchi (Tr. 256).  The
doctor stressed that it was "absolutely vital that she quit
smoking as the sarcoid has caused significant damage to her
lungs" (Tr. 256).  On July 10, 2007, Fay noted that pulmonary
function studies and chest x-ray showed a significant increase
in her interstitial prominence in both lungs, consistent with
relapse and progression of her sarcoidosis (Tr. 254).  The
doctor noted that she was in no acute distress and that oxygen
intake was 97 percent; Plaintiff was to be treated with
prednisone.  On October 17, Fay noted that Tabb was still
smoking even though she had been given a prescription for
Chantix;[2] she was currently experiencing shortness of breath and
a chronic, bronchitic cough (Tr. 253).  Pulmonary function
studies showed a forced vital capacity of 54 percent with a
total lung capacity of 58 percent and a DLCO of 51 percent which

disorders/sarcoidosis/sarcoidosis.htm

was "consistent with a total and permanent disability from a respiratory standpoint" (Tr. 253). Dr. Fay strongly counseled Tabb to quit smoking.

Treatment notes from Orthopedic Surgeon James L. West, III show that he has seen Plaintiff intermittently for over ten years (Tr. 311-23). On September 24, 2007, Tabb was seen for complaints of pain in the lower back, left buttock, and leg as well as some left scapular symptoms; the doctor noted lumbar spasm and tenderness with pain on forward flexion. And MRI and x-rays showed degenerative changes with moderate herniation at L5-S1 (Tr. 313).

On February 12, 2008, a physical residual functional capacity (hereinafter *RFC*) assessment was completed by Sheila Brody with the Social Security Administration indicating that Tabb was able to lift and or carry ten pounds occasionally and less then ten pounds frequently; she would be able to stand or walk for two hours and sit about six hours during an eight-hour workday (Tr. 344-51). She could use hand and foot controls on an unlimited basis. It was her opinion that Plaintiff would be able to balance frequently, climb stairs, stoop, kneel, crouch,

---

[2]Chantix is used as an aid to smoking cessation treatment. **Error! Main Document Only.***Physician's Desk Reference* 2494-95 (62nd ed. 2008).

and crawl occasionally, but could never climb a ladder.

On March 12 and April 21, 2008, Dr. Yoder prescribed inhalers and gave Tabb medication samples (Tr. 252).

On April 28, Dr. West noted that Plaintiff was still having back symptoms; he prescribed Mobic,[3] Tylenol #3,[4] and Soma[5] (Tr. 353).

Dr. Fay examined Tabb on May 14, 2008 and noted that her respiratory symptoms were generally well controlled with prednisone; the Pulmonologist noted that because of the steroids she had gained an enormous amount of weight, saying that she was "essentially totally and permanently disabled" (Tr. 354).  The doctor noted airways reactivity associated with her sarcoid. The doctor again counseled Plaintiff to quit smoking.

In records from November 4, 2008, Dr. Yoder noted that Tabb had quit smoking (Tr. 357-58).  She was diagnosed with acute bronchitis.

On November 26, 2008, Dr. Jack H. Obeid, a partner with Dr.

---

[3]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[4]**Error! Main Document Only.***Tylenol* with codeine is used "for the relief of mild to moderately severe pain."  *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

[5]**Error! Main Document Only.***Soma* is a muscle relaxer used "for the relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours.  *Physician's*

Fay at Pensacola Pulmonary Associates, noted that Tabb was still smoking about a pack a day and that she had recently undergone a bout with pneumonia; he noted congestion and coughing with minimal wheezing (Tr. 365).  Obeid also noted infiltrates in her lungs and an element of bronchitis.  The doctor ordered Plaintiff to quit smoking immediately.  He also wrote on a prescription form that "Mrs. Tabb has stage II sarcoidosis and is disabled" (Tr. 360).  The Pulmonologist saw Tabb again on March 6, 2009 and noted that her vital signs were stable and she was afebrile; there was no wheezing or rhonchi (Tr. 364).

Plaintiff was seen by Dr. Yoder for various ailments, including boils and pneumonia, between December 2008 and March 2009 (Tr. 366-77).  On December 19, the doctor noted that Plaintiff had quit smoking (Tr. 377).  An echocardiogram on March 13, 2009 demonstrated significant ventricular hypertrophy with no aortic insufficiency (Tr. 366).  In an undated clinical assessment of pain form, Dr. Yoder indicated that Tabb's pain would distract her from adequately performing daily activities or work and that physical activity would greatly increase her pain, causing her to be distracted from whatever she was doing; he further indicated that her pain was severe and would limit

---

*Desk Reference* 2968 (52nd ed. 1998).

her effectiveness (Tr. 379-80).  The doctor further indicated
that Plaintiff could not engage in gainful employment on a
repetitive, competitive, and productive manner.  He admitted
that he had not prescribed any narcotic medications for Tabb.
Yoder also completed a clinical assessment of fatigue form, on
July 29, 2009, in which he indicated that fatigue incapacitated
Plaintiff and that physical activity would cause her to have to
get bed rest (Tr. 383).  He again indicated that she would be
unable to work.

The ALJ summarized the medical evidence and determined that
Tabb could perform less than a full range of sedentary work (Tr.
18-29).  In reaching this decision, she rejected Dr. Fay's
opinion that Tabb was totally and permanently disabled because
"there is no evidence that Dr. Fay knows the measure of
disability from the stand point of the Commissioner" (Tr. 24).
Dr. Obeid's opinion of disability was rejected for the same
reason (Tr. 24).  Dr. Yoder's opinion of disability was rejected
as being inconsistent with his own treatment records (Tr. 25).
Plaintiff's own testimony of limitation was rejected as
inconsistent with the medical evidence (Tr. 26).[6]  The ALJ gave
great weight to the RFC assessment completed by Sheila Brody as

---

[6]The Court notes that Tabb has not challenged this finding.

9

"consistent with the longitudinal medical evidence" (Tr. 26).
This concludes the Court's summary of the evidence.

Plaintiff claims that the ALJ did not properly consider the
opinions of her treating physicians while giving great weight to
a non-medical source.  It should be noted that "although the
opinion of an examining physician is generally entitled to more
weight than the opinion of a non-examining physician, the ALJ is
free to reject the opinion of any physician when the evidence
supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d
1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 404.1527
(2011).  The Court also notes that the opinion of a nonexamining
physician "is entitled to little weight and taken alone does not
constitute substantial evidence to support an administrative
decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir.
1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.
1985).

The Court notes at the outset that Defendant admits that
the ALJ erred in giving great weight to Brody as a single
decision maker (Doc. 14, p. 8 n.13) ("Ms. Brody is a single
decision maker (SDM).  An SDM is not a medical source.  See 20

---

[7]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d
1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions
of the former Fifth Circuit rendered prior to October 1, 1981.

10

C.F.R. § 404.906 (2011).  An SDM's assessment is not opinion
evidence that an ALJ may rely upon in reaching a disability
determination.  See Program Operations Manual System DI
24510.050C, 2001 WL 1933365 (forms completed by an SDM are not
opinion evidence at the appeal level)").  Nevertheless, the
Government argues that the error is not per se reversible and
that it was not harmful to Tabb (Doc. 14, pp. 8-9).

     While the Court is concerned that the ALJ has rejected the
opinions of Plaintiff's three treating physicians, two of which
are specialists, and given great weight to a person who is not a
doctor and has never laid eyes on Tabb, the Court, in this
circumstance, cannot say that the ALJ's opinion is not supported
by substantial evidence.  Dr. Yoder's opinions of disability on
the pain and fatigue forms are inconsistent with his medical
records in that he has never prescribed pain medication and
there is no record of Plaintiff's complaints of fatigue.  While
Drs. Fay and Obeid offer objective medical evidence of pulmonary
insufficiency, their conclusions of disability are diminished by
their reports that Plaintiff was in no apparent distress and
that her condition was controlled by medication.  While their
conclusions may well be right, the evidence does not show it.

     Furthermore, the Court notes that the Social Security

regulations state that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  20 C.F.R. 1530(a) (2011). The regulation goes on to state that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."  20 C.F.R. § 404.1530(b) (2011); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  Tabb's failure to quit smoking after being repeatedly told to do so by her Pulmonologists does not aid her quest for benefits.  Tabb's claim that the ALJ did not properly consider the opinions of her treating doctors is without merit.

Plaintiff also claims that the ALJ did not properly evaluate her obesity.  In SSR 02-1p, the Social Security Administration issued a ruling entitled *Evaluation of Obesity* which examines the analysis for determining the following: whether a person is obese (based on a formula known as the Body Mass Index); whether the obesity is a medically determinable impairment; and whether the obesity is severe.  The latter determination is made by determining whether "it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p.

12

The Court notes that the ALJ specifically found that Tabb's obesity was a severe impairment (Tr. 20).  The ALJ made no other findings, however, specific to her obesity.

Nevertheless, the Court notes that, in discussing Plaintiff's other impairments, the ALJ found that she did not have difficulty walking and there was no evidence of end organ damage (Tr. 22).  Furthermore, there was no evidence of limitation of motion or motor or sensory loss (*id*.).  While the medical evidence does demonstrate Tabb's extreme weight gain because of steroid treatment of her sarcoidosis, it does not suggest that she cannot work because of it; it has certainly not shown that she is disabled.

Plaintiff has raised two claims in bringing this action. Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 24th day of January, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE